**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Fahmy K. A.,[1]                                                  Case No. 26-cv-223 (ECT/DLM)

               Petitioner,

v.                                                                      **REPORT AND**
                                                                        **RECOMMENDATION**

United States of America,

               Respondent.

---

This matter is before the Court on pro se Petitioner Fahmy K. A.'s Petition for Writ of Habeas Corpus, filed January 12, 2026. (Doc. 1.) Petitioner asserts that his detention after a final order of removal has been unconstitutionally extended because there is not a significant likelihood of his removal in the reasonably foreseeable future. (*See generally id*.) Respondent counters that Petitioner cannot show that there is not a significant likelihood of removal in the reasonably foreseeable future because any delay in his removal is the result of his own attempts to frustrate the removal process. And, in any event, the government expects that Petitioner will be removed in the reasonably foreseeable future. The case has been referred to the undersigned United States Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1. For the reasons stated below, the Court respectfully recommends that Petitioner Fahmy K. A.'s Petition for Writ of Habeas Corpus be denied.

---

[1] This District has adopted a policy of using only the first name and last initial of any nongovernmental parties in immigration cases.

**BACKGROUND**

Petitioner Fahmy K. A. is a native of Sudan subject to a final order of removal. (Docs. 1 at 6; 5 ¶ 9; 5-2.) On July 6, 2023, an immigration judge at Fort Snelling, Minnesota ordered Petitioner removed from the United States in absentia. (Docs. 5 ¶ 9; 5-2.) Because Petitioner was not removed within 90 days of the removal order, on November 6, 2024, Immigration and Customs Enforcement ("ICE") served Petitioner with an Order of Supervision, Form I-220B, while he was incarcerated at the Grand Forks County Jail in North Dakota. (Docs. 5 ¶ 10; 5-3.) Then, on July 7, 2025, ICE "encountered [Petitioner]" at the Grand Forks County Correctional Center and served the jail with a detainer notification request. (Doc. 5 ¶ 11.) A week later, ICE arrested Petitioner upon his release from the Grand Forks County Correctional Center. (Docs. 5 ¶ 12; 5-4.)  Petitioner has been in ICE custody in Minnesota since July 15, 2025. (Docs. 1 ¶ 11; 5 ¶¶ 12, 13; 5-4.))

On July 16, 2025, ICE reviewed Petitioner's case consistent with 8 U.S.C. § 1231 and 8 C.F.R. § 241.4 (Doc. 5-5 at 1-3.) This review resulted in a decision to revoke Petitioner's release.[2] (*Id*.) ICE determined that "[b]ased on recent discussion with the

---

[2] Petitioner does not challenge the validity of ICE's revocation of his release. (*See generally* Doc. 1.) The Court notes that ICE could have revoked Petitioner's release for violating any conditions of his release. *See* 8 C.F.R. § 241.13(i)(1) ("Any [noncitizen] who has been released under an order of supervision . . . who violates any of the conditions of release may be returned to custody . . . The [noncitizen] may be continued in detention for an additional six months in order to effect the [noncitizen's] removal, if possible, and to effect the conditions under which the alien had been released."). And it appears that Petitioner's 2025 criminal convictions may have violated the conditions of his release. (*See* Doc. 5-3 at 3 (imposing condition that Petitioner not commit any crimes while on supervision).) But ICE's Notice of Release Revocation did not invoke any violations of Petitioner's release conditions as a basis for revocation. (*See* Doc. 5-5 at 1.) Rather, ICE premised Petitioner's release revocation on changed circumstances. *See* § 242.13(i)(2) ("The Service may revoke

government of Sudan, there is now a significant likelihood of [Petitioner's] removal in the reasonably foreseeable future" and Petitioner should therefore remain in ICE's custody. (*Id*. at 1.) On August 7, 2025, ICE requested travel documents from the Embassy of Sudan on Petitioner's behalf. (Docs. 5 ¶ 14; 5-6 at 1.) According to Respondent, Petitioner was "uncooperative with the travel document request process, twice refusing to complete the required travel document application forms." (Docs. 5 ¶ 14; 5-6 at 1.) On August 12, 2025, ICE again conducted a custody review of Petitioner and determined that he would not be

---

[a noncitizen's] release under this section and return the [noncitizen] to custody if, on account of changed circumstances, the Service determines that there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future."). According to the Notice of Release Revocation, ICE determined there were changed circumstances sufficient to revoke Petitioner's release "[b]ased on recent discussion with the government of Sudan" which, from ICE's perspective, created a "significant likelihood of [Petitioner's] removal in the reasonably foreseeable future." (Doc. 5-5 at 1-3.) Although Petitioner bears the burden of showing his detention violates the law, courts in this district "have concluded that 8 C.F.R. § 241.13(i)(2) places the burden on the government to establish that changed circumstances justify a non-citizen's re-detention." *Chou T. v. Noem*, No. 26-cv-01432 (SHL/ECW), 2026 WL 607413, at *4 (D. Minn. Feb. 20, 2026), *R. & R. adopted sub nom. Thao v. Noem*, 2026 WL 613575 (D. Minn. Mar. 4, 2026). Where, as here, the government makes only conclusory assertions of the likelihood of a noncitizen's removal, that burden is not satisfied. *Id*.; *see also Roble v. Bondi*, 803 F. Supp. 3d 766, 773 (D. Minn. 2025). Here, Respondent asserts that "discussion with the government of Sudan" warranted revoking Petitioner's release on July 16, 2025. But considering ICE did not even request travel documents from Sudan until August 7 (Doc. 5 ¶ 14) and did not receive a valid travel document from the Sudanese Embassy until August 18 (*id.* ¶ 16), it is hard to see how Respondent could satisfy its burden to justify Petitioner's re-detention based on changed circumstances on this record. After all, § 241.13(i)(2) places the burden on the government "to show a change in circumstance *before* revoking an order of supervision and detaining a person indefinitely." *Chou T.*, 2026 WL 607413, at *5 (quoting *Vang v. Bondi*, No. 26-cv-1381 (JMG/DLM), at *5 (D. Minn. Feb. 18, 2026) (ordering release where Respondents obtained a travel document after detaining Petitioner)). Any change here appears to have occurred *after* Petitioner was re-detained. But it could be the record on this issue is insufficiently developed since Petitioner has not challenged the revocation of his release.

released. (Doc. 5-6 at 1.) As a basis for its decision, ICE stated that Petitioner's August 7, 2025 refusal to "comply with an officer's instruction to complete the required travel document" amounted to conduct preventing his "removal from the United States." (*Id*.) ICE therefore extended Petitioner's removal period. (*Id*.)

On August 18, 2025, ICE received a valid travel document for Petitioner from the Embassy of Sudan and began to arrange for his removal to Sudan by commercial air travel. (Doc. 5 ¶ 16.) But Respondent asserts that due to an extended security-related closure of the airport in Khartoum, Sudan's capital city, ICE was at first unable to schedule a departure flight for Petitioner. (*Id*. ¶ 17.) By January 2026, the Khartoum airport had been reopened, and ICE was cleared to schedule Petitioner's removal flight. (*Id*. ¶ 18.)

According to Respondent, Petitioner was scheduled to depart the United States to Sudan on January 15, 2026, but Petitioner "failed to cooperate with this scheduled removal." (*Id*. ¶ 19.) On February 12, 2026, Respondent submitted a supplemental declaration and exhibit. (Docs. 8, 8-1.) The declaration states that on January 15, 2026, ICE Deportation Officers ("DOs") and a Customs and Border Protection Officer ("CBPO") attempted to remove Petitioner by a "witnessed departure" from the Minneapolis/St. Paul International Airport ("MSP").[3] (Doc. 8 ¶¶ 5, 8.) But Petitioner refused to board his ticketed flight despite several warnings from the officers that his failure to comply with his final

---

[3] Respondent provides little clarity as to Petitioner's destination. A Deportation Officer represented to Petitioner that "his connection to Sudan would be via Chicago, IL (O'Hare International Airport ORD)." (Doc. 8 ¶ 7.) But once Petitioner arrived at MSP, he was ticketed to Chicago, IL and Addis Ababa, Ethiopia, without mention of a connecting flight to Sudan. (*Id*. ¶ 8.)

order of removal would result in his prosecution, as well as his inevitable removal by charter flight to Sudan. (*Id*. ¶¶ 6-9.) After refusing several times to board the flight and comply with removal, Petitioner was escorted by the officers to ICE's St. Paul Field Office and from there, transported back to the Kandiyohi County Jail. (*Id*. ¶ 10.) ICE served Petitioner with a Notice of Failure to Comply based on his refusal of transport on January 27, 2026. (Doc. 8-1.)

Petitioner describes the day's events differently. (*See generally* Doc. 9.) As Petitioner tells it, he was taken to the Whipple Federal Building at Fort Snelling where ICE agents presented him with papers that said he was to be removed to Ethiopia.[4] (*Id*. at 3.) Petitioner "protested and [declined] to sign the papers" because he "refused to be deported to a second country[.]" (*Id*.) According to Petitioner, the agents then transported him to the airport and along the way "they kept trying to persuade [him] to sign the papers." (*Id*.) Once at the airport, the agents "continued their efforts in removing [Petitioner] to Ethiopia." (*Id*.)

Though they differ on the details, both parties agree Petitioner did not depart the United States on January 15, 2026. In its subsequent Notice of Failure to Comply, ICE informed Petitioner that it had conducted yet another custody review and determined that

---

[4] Respondent's lack of clarity regarding Petitioner's destination lends at least some credence to Petitioner's version of events, although neither party has provided evidence to support or contradict this point. More importantly, Petitioner does not allege in his Petition that the government is attempting to remove him to a country other than Sudan without proper notice. (*See generally* Doc. 1.) Even so, there is conceivably a lawful basis for Petitioner's removal to a country other than his country of origin. *See* 8 U.S.C. § 1231(b)(2) (explaining countries to which [noncitizens] may be removed).

he would not be released from custody because of an extension of his removal period.[5] (Doc. 8-1 at 1.) Petitioner remains in ICE's custody in the Kandiyohi County Jail. Immigration and Customs Enforcement, *Detainee Locator*, https://locator.ice.gov/odls/#/results [https://perma.cc/4XF8-Q63S] (last visited April 9, 2026); (*see also* Doc. 7 (Respondent's status update indicating Petitioner remains in ICE's custody at the Kandiyohi County Jail)). According to Respondent, Petitioner "will be re-scheduled for removal when ERO [Enforcement and Removal Operations] Headquarters has scheduled a charter flight to Sudan." (Doc. 5 ¶ 20.) And although the timeframe for Petitioner's removal is "not currently known" due to the "complex nature of scheduling charter missions," ICE expects "[Petitioner's] removal will occur within the foreseeable future." (*Id.*)

Petitioner argues that there is no significant likelihood of his removal in the reasonably foreseeable future for two reasons. First, he says he has been detained since July 15, 2025—over six months—and ICE has made no effort to remove him. (Doc. 1 at 6.) Second, Petitioner argues that his "country of citizenship (Sudan) isn't taking any person back" because his "country is at civil war." (*Id.*) Respondent contends that the petition should be denied because any delay in Petitioner's removal is the result of his own refusal to comply with removal, but in any event Petitioner's removal is expected to occur within the reasonably foreseeable future.

---

[5] ICE based its determination on Petitioner's failure to comply with its efforts to remove him to Petitioner's "native country of Russia." (Doc. 8-1 at 1.) But as Petitioner has made clear, and Respondent should know, Petitioner's native country is Sudan. The Court assumes this was a scrivener's error.

## ANALYSIS

Federal courts have jurisdiction to order the release of a person who is unconstitutionally detained. 28 U.S.C. § 2241(c)(3). The "primary federal habeas corpus statute" is the appropriate vehicle for noncitizens to challenge the legality of their immigration-related detention. *Zadvydas v. Davis*, 533 U.S. 678, 687-88 (2001). Petitioner has properly presented his matter via habeas petition, and as such the Court turns to the merits of his claim of unlawful detention.

The Supreme Court's seminal decision in *Zadvydas* established the contours and framework for a circumstance like Petitioner's—where a noncitizen does not question the legality of their removal but challenges only the length of detention pending that removal. Immigration proceedings, such as the removal proceedings Petitioner faces, are presumed "nonpunitive in purpose and effect." 533 U.S. at 690. For this reason, an "indefinite detention of a [noncitizen] would raise a serious constitutional problem." *Id.*

To address this concern, the Court concluded that administrative detention of a noncitizen is permissible so long as the person's removal is "reasonably foreseeable." *Id.* at 699-700. Recognizing the amorphous nature of that phrase, the *Zadvydas* Court set certain parameters: detention for six months or less is presumed reasonable; after six months, if a person "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* at 701.

"The longer the [noncitizen's] post-removal detention, the easier it is for him to satisfy his initial burden . . . because what counts as the 'reasonably foreseeable future'

7

shrinks as the period of prior post-removal confinement grows." *Ahmed v. Brott*, No. 14-cv-5000 (DSD/BRT), 2015 WL 1542131, at *3 (D. Minn. Mar. 17, 2015), *R. & R. adopted*, 2015 WL 1542155 (D. Minn. Apr. 7, 2015) (quoting *Zadvydas*, 533 U.S. at 701) (cleaned up). But "[w]hen [a noncitizen] refuses to cooperate in securing his removal, or actively thwarts the removal process, he can be detained for longer than the *Zadvydas* presumptively reasonable six-month period." *Williams v. Sessions*, No. 18-cv-2633(DSD/SER), 2019 WL 234350, at *4 (D. Minn. Jan. 16, 2019), *aff'd as modified sub nom. Williams v. Barr*, 786 F. App'x 71 (8th Cir. 2019) (collecting cases).

There is no dispute that Petitioner has been in ICE's custody since July 15, 2025—over six months. Even so, the Court concludes that Petitioner has failed to meet his burden under *Zadvydas* to show that there is no significant likelihood of removal in the reasonably foreseeable future. Respondent has presented documentary evidence that Petitioner failed or refused to cooperate with his removal in August 2025 when he failed to complete his travel documents, and in January 2026 when he refused to board his ticketed removal flight. (Docs. 5-6 at 1; 8-1 at 1.) Petitioner provides some context for those events—namely, confusion over his final destination for the January 15, 2026 trip—but no real evidence to rebut Respondent's position that he failed to cooperate. Because the only evidence before the Court shows that Petitioner acted to frustrate his removal as recently as January 15, 2026, he cannot show that there is no significant likelihood of removal in the reasonably foreseeable future. *Williams*, 2019 WL 234350, at *4. The Court therefore recommends that Petitioner Fahmy K. A.'s Petition be denied.

Although the Court has concluded that the Petition should be denied based on Petitioner's refusal to cooperate with his removal, the Court will address Petitioner's second argument for the sake of thoroughness. Separate from the length of his post removal detention, Petitioner contends that there is no significant likelihood of his removal in the reasonably foreseeable future because Sudan, his country of citizenship, is fighting a civil war and not accepting people into the country. Cases in this District have identified five general circumstances where courts have found there was no significant likelihood of removal: (1) where a person is stateless and will not be accepted by another country; (2) where the person's country of origin will not issue travel documents; (3) where there is no repatriation agreement; (4) where political conditions in the country of origin make it "virtually impossible" to return the person; and (5) where the delay in getting travel documents is so long that it seems they will never issue. *Ahmed*, 2015 WL 154131, at *4.

The Court construes Petitioner's argument to be that civil war in Sudan has resulted in political conditions which make it virtually impossible for him to return there. While civil war may have made it impossible to return noncitizens to Sudan in the past, Respondent has provided evidence through the declaration of Deportation Officer Angela Minner that ICE is now working with the government of Sudan to process travel documents for its citizens and repatriate people to Sudan. (Docs. 5 ¶¶ 14, 16; 5-5 at 1.) Petitioner himself has even received a valid travel document from the Sudanese Embassy. (Doc. 5 ¶ 16.) Petitioner has provided no evidence to the contrary. There is thus no evidence on this record that political conditions in Sudan make it virtually impossible for Petitioner to return there. As a result, Petitioner again fails to show that there is no significant likelihood of his

removal in the reasonably foreseeable future. The Court therefore recommends that Petitioner Fahmy K. A.'s Petition for Writ of Habeas Corpus (Doc. 1) be denied and this matter be dismissed without prejudice.

## RECOMMENDATION

Accordingly, based on all the files, records, and proceedings in this case, **IT IS RECOMMENDED** that:

1. Petitioner Fahmy K. A.'s Petition for Writ of Habeas Corpus (Doc. 1) be **DENIED**; and

2. This action be **DISMISSED WITHOUT PREJUDICE**.

Date: April 14, 2026

*s/Douglas L. Micko*
DOUGLAS L. MICKO
United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed findings and recommendations within 14 days after being served with a copy" of the Report and Recommendation.

A party may respond to those objections within 14 days after being served a copy of the objections. *See* Local Rule 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).